# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID BROWN | : | |
|     Plaintiff, | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 10-2687 |
| CITY OF PHILADELPHIA, ET AL., | : | |
|     Defendants. | : | |

## MEMORANDUM AND ORDER

Tucker, J.                                                                                                                                                             November____ , 2010

     Presently before this Court is Defendant Northeastern Title Loans, LLC's ("Northeastern") Motion to Compel Arbitration (Doc. 8), Plaintiff's Response in Opposition thereto (Doc. 13), and Northeastern's Reply (Doc. 18). For the reasons set forth below, the Court grants Northeastern's Motion.

## BACKGROUND

     This action arises from a repossession executed in connection with a vehicle title loan entered into by Plaintiff and Northeastern. The pertinent facts giving rise to Plaintiff's Complaint are as follows.

### A. The Title Loan Agreement

     On April 15, 2008, Plaintiff entered into an Installment Loan and Security Agreement ("Loan Agreement") with Northeastern to borrow $1,500.00. The Loan Agreement provided Northeastern with a security interest in Plaintiff's vehicle, a 1999 Lexus ES 300. The Loan Agreement also provided for an interest rate of 365% and a finance charge of $450.00. To satisfy his obligation under the loan, Plaintiff was required to make one payment of $1,950.00 no later

than May 15, 2008. The Promissory Note section of the Loan Agreement provides as follows: "I/We agree that this note will be in default for any failure to make any required payment when due . . . and that you may exercise your rights under the law to enforce payment of this note, including repossession of the collateral securing this loan." (Doc. 8 Ex. A.)

In addition to the Loan Agreement, Plaintiff and Northeastern also entered into an Arbitration Agreement. The introduction of the Arbitration Agreement provides:

> READ THIS ARBITRATION AGREEMENT. IF YOU DON'T REJECT IT IN ACCORDANCE WITH PARAGRAPH (a) BELOW, TO THE EXTENT PERMITTED BY APPLICABLE LAW, IT WILL BECOME PART OF YOUR INSTALLMENT LOAN AND SECURITY AGREEMENT AND HAVE A SUBSTANTIAL IMPACT ON THE WAY IN WHICH YOU OR WE WILL RESOLVE ANY CLAIM WHICH YOU OR WE HAVE AGAINST EACH OTHER NOW OR IN THE FUTURE.
>
> This Arbitration Agreement describes when and how a Claim (as defined below) arising under or related to this INSTALLMENT LOAN AND SECURITY AGREEMENT (the 'Loan Agreement') between you and us may be arbitrated.

Id.

Paragraph (a) of the Arbitration Agreement provides: "*Your Right to Reject*: If you don't want this Arbitration Agreement to apply, you may reject it by mailing us a written rejection notice. . . . If you don't reject this Arbitration Agreement, it will be effective as of the date of the Loan Agreement." Id. The paragraph also states that Northeastern must receive the rejection notice within fifteen (15) days after the date of the Loan Agreement. Id.

Paragraph (b) of the Arbitration Agreement provides:

> *What Claims Are Covered*: 'Claim' means any claim, dispute or controversy between you and us that in any way arises from or relates to the Loan Agreement. 'Claim' has the broadest possible meaning, and includes initial claims, counterclaims, cross-claims and third-party claims. It includes disputes based upon contract, tort, consumer rights, fraud . . . . Subject to paragraph (f) below, it

>also includes disputes about the validity, enforceability, arbitrability or scope of this Arbitration Agreement. . .

Id.

Paragraph (c) of the Arbitration Agreement provides: "*How Arbitration Is Started*: Either you or we may require any Claim to be arbitrated. Arbitration is started by giving written notice to the other party of the intent to start or to compel arbitration. . . . The notice may be in the form of a motion or petition to compel arbitration." Id. Paragraph (e) of the Arbitration Agreement provides that "[i]f arbitration is chosen with respect to a Claim . . . [t]here will be no right to try that Claim in court." Id. Paragraph (i) of the Arbitration Agreement establishes that the agreement is governed by the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. ("FAA"). Id. The final page of the Arbitration Agreement contains an acknowledgment clause which indicates that by signing the agreement, the borrower acknowledges that he or she has read the agreement, is entering into the agreement voluntarily, and has the right to reject the Arbitration Agreement. The Arbitration Agreement was fully executed by both Plaintiff and Northeastern.

### B. The Vehicle Repossession

Plaintiff alleges that on November 22, 2008 at around 2:00 p.m., he witnessed Defendant Johanson, a representative of Northeastern, attempt to repossess Plaintiff's vehicle, which was parked in Plaintiff's driveway. Not wanting his vehicle to be repossessed, Plaintiff opened the driver's side door of his vehicle, sat in the driver's seat and locked himself inside. Defendant Johanson continued to attach chains to Plaintiff's vehicle and began towing the vehicle down the street with Plaintiff still inside. Plaintiff called the Philadelphia Police Department, and a few minutes later, Defendant Officer Jenkins arrived on the scene and advised Plaintiff to exit the

vehicle. Plaintiff refused and asked Officer Jenkins to contact his supervisor. When Defendant Sargent Williams arrived on the scene he also ordered Plaintiff to exit the vehicle. Again, Plaintiff refused and told Williams that he was disobeying Philadelphia Police Department rules and regulations by assisting in a repossession. Plaintiff alleges that Sargent Williams then hit the side of Plaintiff's vehicle and threatened to break the window if Plaintiff did not exit the vehicle. Allegedly fearing for his safety, Plaintiff complied and exited the vehicle. Plaintiff claims that he suffered a neck sprain as a result of being "hoisted, jacked up and towed down the street." He also claims that his constitutional rights were violated by the police officers' involvement in the repossession.

**C. Procedural History**

On June 6, 2010, Plaintiff filed a Complaint (Doc. 1) against Defendants City of Philadelphia, Officer Andrew Jenkins, Sargent Christopher Williams, Police Commissioner Sylvester Johnson, Northeastern, Richard Johanson, and John Does 1-10. Plaintiff's Complaint contains the following four counts: Count I against the City of Philadelphia and the police officers for violating his civil rights under the United States Constitution; Count II against the City of Philadelphia and the police officers for violating his civil rights pursuant to Monell v. Dep't of Social Services, 436 U.S. 658 (1978); Count III against Northeastern and Johanson for negligence; and Count IV against Northeastern and Johanson for conversion. Plaintiff seeks injunctive relief in the form of monitoring and education; statutory damages; compensatory damages for financial injury, bodily injury, pain and suffering, and emotional distress; attorneys' fees and costs; and punitive damages.

On July 14, 2010, Defendants City of Philadelphia, Jenkins, Williams, and Johnson

("Answering Defendants") filed an Answer (Doc. 4) generally denying the allegations set forth in Plaintiff's Complaint. Answering Defendants note that former Police Commissioner Johnson was not employed as the Commissioner of the Philadelphia Police Department at the time of this incident. They also assert eight affirmative defenses including, inter alia, that Plaintiff's Complaint fails to state a claim; Answering Defendants are immune from liability under the doctrine of qualified immunity; Plaintiff has failed to mitigate damages; and Answering Defendants' conduct was not the proximate cause of Plaintiff's injuries.

On August 3, 2010, Northeastern filed a Motion to Compel Arbitration (Doc. 8). On October 1, 2010, Plaintiff filed a Response in Opposition thereto (Doc. 13). On November 1, 2010, Northeastern filed a Reply (Doc. 18). The Court now addresses this pending motion.

## **LEGAL STANDARD**

A district court decides a motion to compel arbitration under the same standard it applies to a motion for summary judgment. Kaneff v. Del. Title Loans, Inc., 587 F.3d 616, 620 (3d Cir. 2009). The party opposing arbitration is given "the benefit of all reasonable doubts and inferences that may arise." Id. (quoting Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 54 (3d Cir. 1980)).

To determine whether to grant a motion to compel arbitration, the Court must conduct a two-step inquiry: "(1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 533 (3d Cir. 2005). The court "is not to consider the merits of the claims giving rise to the controversy." Great W. Mortgage Corp. v. Peacock, 110 F.3d 222, 228 (3d Cir. 1996) (citing 9 U.S.C. § 2). The party opposing the enforcement of the arbitration agreement bears the burden

of proving that the claims at issue are not subject to arbitration. Green Tree Fin. Corp. Ala. v. Randolph, 531 U.S. 79, 91-92 (2000). A party to a valid and enforceable arbitration agreement is entitled to a stay pending arbitration. 9 U.S.C. § 3.

## DISCUSSION

The principal questions here are (1)whether the Arbitration Agreement executed by Plaintiff and Northeastern is valid and requires arbitration; and (2) whether Plaintiff's negligence and conversion claims against Northeastern fall within the scope of the agreement. For the reasons discussed below, the Court answers both of these inquiries in the affirmative.

### A. The Parties' Arguments

To support its Motion to Compel Arbitration, Northeastern argues that the Arbitration Agreement is valid and enforceable because it is neither procedurally nor substantively unconscionable. Northeastern also argues that the agreement requires Plaintiff to raise any claims against Northeastern in arbitration. Northeastern also argues that Plaintiff's claims fall within the scope of the Arbitration Agreement because both claims arose as a result of the Loan Agreement Plaintiff signed, which gave Northeastern the right to repossess the vehicle in the event of default.

Plaintiff disagrees and contends that the Arbitration Agreement should not be enforced because (1) it is a prohibited addendum to the Retail Installment Sales Contract as provided in the Pennsylvania Motor Vehicle Sales Finance Act ("MVSFA"); and (2) it does not require arbitration, rather uses permissible language, and is therefore void for ambiguity. Plaintiff also contends that his claims against Northeastern do not constitute "claims" within the meaning of the Arbitration Agreement since he does not complain about Northeastern's contractual right to

repossess, but rather, the unlawful manner in which the repossession was performed.

Northeastern counters that the MVSFA is inapplicable because the statute applies only to installment financing contracts for the sale of motor vehicles, and in this matter, Plaintiff entered into a single-payment loan agreement using the vehicle he already owned as collateral. Northeastern also counters that the broadly worded arbitration clause encompasses Plaintiff's claims because the agreement includes tort claims arising from or related to the Loan Agreement.

**B.  Analysis**

The Federal Arbitration Act evidences a strong federal policy in favor of arbitration and federal law presumptively favors the enforcement of arbitration agreements. Alexander v. Anthony Int'l., L.P., 341 F.3d 256, 263 (3d Cir. 2003). Section 2 of the FAA, provides that

> [a] written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Arbitration agreements are thus "enforceable to the same extent as other contracts." Alexander, 341 F.3d at 263.

**i.  Validity and Enforceability of the Arbitration Agreement**

To determine whether to grant a motion to compel, the court must first establish that a valid arbitration agreement exists. See Trippe Mfg. Co., 401 F.3d at 533. This requires the court to look toward the relevant state law of contracts. See First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995); Parilla v. IAP Worldwide Servs., VI, Inc., 368 F.3d 269, 275 (3d Cir. 2004) (quoting Alexander, 341 F.3d at 264) ("Applying the relevant state contract law, a court may ... hold that an agreement to arbitrate is 'unenforceable based on a generally applicable

contractual defense such as unconscionability'"). Under Pennsylvania law, a valid contract exists when (1) both parties manifested an intention to be bound by the agreement; (2) the terms of the agreement are sufficiently definite to be enforced; and (3) the agreement is supported by consideration. See Blair v. Scott Speciality Gases, 283 F.3d 595, 603 (3d Cir. 2002).

Here, the Court agrees with Northeastern and finds that Plaintiff's first argument challenging the validity of the Arbitration Agreement - that it is barred by the Pennsylvania MVSFA - is easily disposed of as erroneous. The MVSFA applies only to installment financing contracts for the *sale* of motor vehicles. See 69 P.S. § 602 (emphasis added). The facts clearly demonstrate that Plaintiff did not enter into the Loan Agreement with Northeastern to purchase a vehicle. Rather, Plaintiff entered into the agreement to borrow money using the vehicle he already owned as collateral. As such, the Court finds the MVSFA is inapplicable to this transaction and Plaintiff's argument fails to undermine the validity of the Arbitration Agreement.

Plaintiff's only other contention challenging the validity of the Arbitration Agreement is that it is void for ambiguity. Specifically, Plaintiff claims that the Arbitration Agreement's use of the word "may" renders arbitration optional and not mandatory. To support this argument, Plaintiff points to what he perceives as permissive language in the arbitration clause: "This Arbitration Agreement describes when and how a Claim . . . arising under or related to this [Loan Agreement] . . . between you and us *may* be arbitrated." (Doc. 8 Ex. A) (emphasis added).

The Court finds that Plaintiff's ambiguity argument is flawed. A provision is ambiguous when it "is reasonably susceptible of different constructions and capable of being understood in more than one sense." Kripp v. Kripp, 849 A.2d 1159, 1163 (Pa. 2004). It is the function of the court to decide, as a matter of law, whether the contract terms are clear or ambiguous. Tuthill v.

Tuthill, 763 A.2d 417, 420 (Pa. Super. 2000). In so doing, courts must adhere to the fundamental rule of contract construction, which is to ascertain and give effect to the intention of the parties. Lower Frederick Twp. v. Clemmer, 543 A.2d 502, 510 (Pa. 1988). To determine the intent of the parties, the court must examine the entire contract, taking into consideration "the surrounding circumstances, the situation of the parties when the contract was made, the objects they apparently had in view and the nature of the subject matter." Huegel v. Mifflin Constr. Co., Inc., 796 A.2d 350, 354 (Pa. Super. 2002) (internal citation omitted). A contract should not be interpreted in a way that leads to an absurdity or renders the contract ineffective to accomplish its purpose. Stamerro v. Stamerro, 889 A.2d 1251 (Pa. Super. 2005).

Courts have repeatedly rejected Plaintiff's argument that the use of the word "may" automatically renders an arbitration clause permissive. See e.g., D & H Distrib. Co. v. Nat'l Union Fire Ins., 817 A.2d 1164, 1169 (Pa. Super. 2003) (noting that the court "does not distinguish between the use of the term 'may' or 'shall' in the arbitration context"). To the contrary, courts have interpreted arbitration clauses using the word "may" to be mandatory on the grounds that such language merely manifests the parties' intent that arbitration be obligatory if either party so chooses. See e.g., In re Winstar Commc'ns, Inc., 335 B.R. 556, 563 (Bkrtcy. D. Del. 2005) (citing Chiarella v. Vetta Sports, Inc., 1994 WL 557114, at *3 (S.D.N.Y.1994) ("... the proper interpretation is that the arbitration provision did not have to be invoked, but once raised by one party, it became mandatory with respect to the other party. A plain reading of the clause supports such an interpretation. If the clause were wholly optional ... it would serve no purpose.")); D & H Distrib. Co., 817 A.2d at 1169 (finding that such language evidences the parties' intent to arbitrate disputes at either party's choosing).

Plaintiff's argument is especially similar to the argument made by the plaintiff in Block 175 Corp. v. Fairmont Hotel Mgmt. Co., 648 F. Supp. 450 (D. Colo. 1986). In that case, the arbitration clause at issue read as follows: " 'If any controversy, disagreement, or dispute should arise . . . , either party may serve upon the other a written notice stating that such party desires to have the controversy . . . reviewed by a board of three (3) arbitrators . . . .'" Id. at 451. The court rejected the plaintiff's contention that "the presence of the word 'may' in the arbitration clause renders arbitration permissive and not mandatory." Id. at 452. Rather, the court concluded that "[a] common sense reading of the clause belie[d] this contention. . . [and when] either party elects to arbitrate and serves the proper notice, as was done here, then arbitration must ensue." Id. See also In re Winstar Commc'ns, Inc., 335 B.R. at 563 ("By using the word 'may,' both parties were given the power to enforce the arbitration clause.").

Here, after examining the Arbitration Agreement in its entirety, the Court concludes that the agreement unambiguously compels arbitration. Similar to In re Winstar Commc'ns, Inc. and Block 175 Corp., the use of the word "may" in the Arbitration Agreement in this matter reflects (1) the option that Plaintiff had to reject the agreement within the specified time-frame and (2) if not rejected, the power of both parties to require the other to submit to arbitration after the time for rejection expired. The agreement expressly states in Paragraph (a) that Plaintiff had the option to reject the Arbitration Agreement by providing Northeastern with a written rejection notice within fifteen days of the execution of the Loan Agreement. Plaintiff thus had the option to nullify the arbitration requirement. Since Plaintiff failed to exercise this option, the agreement makes clear that arbitration can be compelled by either party. This interpretation is further supported by Paragraph (c) which states that both Plaintiff and Northeastern have the power to

"require any Claim to be arbitrated" "by giving written notice to the other party of the intent to start or compel arbitration." The agreement goes further and establishes in Paragraph (i) that "[i]f arbitration is chosen . . . [t]here will be no right to try that Claim in court." When read together as a whole, these provisions of the Arbitration Agreement clearly establish the intent of the parties to make arbitration mandatory unless Plaintiff exercised his right to opt out of arbitration within the time prescribed. As such, the Court finds that the language of the Arbitration Agreement is not ambiguous and the Arbitration Agreement is valid and enforceable.

### ii. Scope of the Arbitration Agreement

In addition to establishing that a valid arbitration agreement exists, a court should not grant a motion to compel unless the court also finds that the dispute between the parties falls within the scope of the arbitration agreement. See U.S. Small Bus. Admin. v. Chimicles, 447 F.3d 207, 209 (3d Cir. 2006). On this point, the court's inquiry is very limited, and the court should only assess "whether the party seeking arbitration is making a claim which on its face is governed by the contract." Berkery v. Cross Country Bank, 256 F. Supp. 2d. 359, 365 (E.D. Pa. 2003) (citing Medtronic Ave, Inc. v. Advanced Cardiovascular Sys., Inc., 247 F.3d 44, 55 (3d Cir. 2001)). Because arbitration is a creature of contract, this inquiry is guided by the intent of the parties in making the arbitration agreement. Id. at 366. Courts have found that when the agreement uses broad language, the parties intend to have a broad scope of arbitration. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 406 (1967) (finding that "[a]ny controversy or claim" language in the parties' contract evidenced an intent to give a broad scope to the arbitration agreement). Courts must resolve any doubts in this inquiry in favor of arbitration, such that "[a]n order to arbitrate should not be denied unless it may be said with

-11-

positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." Medtronic, 247 F.3d at 55.

Here, it is unquestionable that Plaintiff's claims against Northeastern falls within the scope of the Arbitration Agreement. Under the plain language of Paragraph (b) of the Arbitration Agreement, claims covered by the Arbitration Agreement have the broadest possible interpretation and include "any claim, dispute or controversy between you and us that in any way arises from or relates to the Loan Agreement." Furthermore, the same paragraph goes on to specifically list tort claims as being covered by the agreement. Here, Plaintiff's two counts against Northeastern are for negligence and conversion, both of which are tort claims. Moreover, the Court finds that both of these claims arise from the Loan Agreement. Plaintiff's negligence and conversion claims are directly related to Northeastern's repossession of the vehicle Plaintiff used as collateral to secure the loan he obtained from Northeastern. But for the Loan Agreement, the repossession would have never taken place. As such, the Court finds that the Arbitration Agreement covers Plaintiff's claims against Northeastern.

## CONCLUSION

In sum, the Court finds that (1) the Arbitration Agreement executed by Plaintiff and Northeastern is valid and enforceable; and (2) Plaintiff's negligence and conversion claims against Northeastern fall within the scope of the agreement. For these reasons, Northeastern's Motion to Compel Arbitration is granted.[1] An appropriate Order follows.

---

[1] The claims against remaining Defendants, however, shall proceed in federal court.