**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**


**DAVID BROWN,**               :         **CIVIL ACTION**
     **Plaintiff**             :
                             :
     **v.**                     :
                             :
**CITY OF PHILADELPHIA, et al.**      :         **NO. 10-CV-2687**
     **Defendants.**            :

<u>**MEMORANDUM OPINION**</u>

**LINDA K. CARACAPPA**                                         **May 16, 2012**
**UNITED STATES MAGISTRATE JUDGE**

         Presently before this court is the Motion for Summary Judgment filed by

Defendants City of Philadelphia, Sylvester Johnson, Police Officer Andrew Jenkins, and

Sergeant Christopher Williams, and Plaintiff's Response.  For the following reasons, the motion

is granted.

**I.**         FACTS AND PROCEDURAL HISTORY

         This action arises out of an allegedly wrongful repossession of a vehicle plaintiff

provided as collateral for a short term loan.  The following facts are viewed in the light most

favorable to plaintiff.

         On April 15, 2008, plaintiff entered into an installment loan and security

agreement with Defendant Northeastern Title Loans, LLC ("Northeastern").  Pursuant to the

terms of the agreement, Northeastern lent plaintiff $1,500.00, and plaintiff was to repay the sum

of $1,950.00 by May 15, 2008.  To secure the loan, plaintiff granted Northeastern an interest in

plaintiff's 1999 Lexus ES 300, and turned over keys for the vehicle pending repayment of the

loan.  Plaintiff did not make payment to Northeastern, although plaintiff communicated to Northeastern that he was working on making a payment.

On the afternoon of November 22, 2008, six months after repayment of the loan was due, plaintiff observed from within his house a tow truck back up to his vehicle, which was parked in the driveway.  Plaintiff ran outside and jumped in the passenger side of the vehicle as the tow truck operator was in the process of hooking up the vehicle.   The tow truck operator told plaintiff to get out of the vehicle and plaintiff refused.  Plaintiff called 911 and communicated that he was in his vehicle and that the tow operator was proceeding to hoist the vehicle.  The tow truck operator returned to his truck and, after several minutes,  pulled his truck out of the driveway, towing the vehicle with plaintiff inside.  Plaintiff attempted to apply the brakes to prevent the truck from pulling the vehicle, which caused a jerk reaction and subsequent neck strain.  The tow truck operator proceeded to tow the vehicle down the street, and stopped halfway down the block.

Petitioner again called 911.  Defendant Officer Andrew Jenkins ("Jenkins") responded to the call, at which time Jenkins spoke to plaintiff, still inside the vehicle, and the tow truck operator.  At that time, the vehicle was hooked by its rear wheels and the tow truck was stopped in the middle of the road.  Plaintiff explained that there was a dispute about the repossession of the vehicle.  Jenkins requested plaintiff to exit the vehicle.  Plaintiff asked Jenkins to contact his supervisor.

Jenkins' supervisor, Defendant Sergeant Christopher Williams ("Williams"), arrived on the scene and Jenkins conveyed that there was a dispute concerning the repossession of the vehicle.  Jenkins then stepped aside and let Williams handle the situation.  Williams spoke

2

to both plaintiff and the tow truck operator.  The operator informed Williams that he had lawful

possession of the vehicle.  Plaintiff explained to Williams that he was protesting the

repossession, and Williams requested that plaintiff exit the vehicle.  Plaintiff refused to exit the

vehicle and instead informed Williams that pursuant to Philadelphia Police Department Directive

3, plaintiff was protesting the tow and Williams was obligated to tell the tow truck operator to

come back another time to claim the vehicle.  Williams informed plaintiff that Directive 3 states

that when the repossession has already occurred, the tow truck operator is allowed to continue

with the repossession.  Plaintiff continued to refuse to get out of the vehicle and rolled up his

window.

Williams requested again that plaintiff exit the vehicle and plaintiff refused.

Williams then pulled out his expandable baton and tapped on the window, asking plaintiff

multiple times to roll down his window.   Plaintiff refused.  Williams threatened to break the

glass with his baton and remove plaintiff if plaintiff continued to refuse to exit the vehicle.

Plaintiff reluctantly exited the vehicle and the tow truck operator drove away with the vehicle.

On June 4, 2010, plaintiffs commenced a 42 U.S.C. § 1983 action against the City

of Philadelphia, Police Officer Jenkins, Sergeant Williams, Police Commissioner Sylvester

Johnson, Northeastern Title Loans, LLC, and the tow operator Richard Johanson.  Plaintiff

alleged that through the repossession of the vehicle the defendants violated the Fourth

Amendment and deprived plaintiff of his right to procedural and substantive due process in

violation of the Fourteenth Amendment.  In Count II, plaintiff claimed that the Defendant City of

Philadelphia failed to properly train and supervise the defendant officers which caused the

violation of plaintiff's constitutional rights, also known as a Monell claim.  In Count III, plaintiff

alleged that Northeastern Title Loans, LLC, and Richard Johanson were negligent in their repossession of the vehicle.  Finally, in Count IV, plaintiff alleged that Defendants Johanson and Northeastern Title Loan committed unlawful conversion in taking plaintiff's vehicle without his permission.

Thereafter, Defendant Northeastern sought an order compelling plaintiff to pursue his claims against Northeastern in arbitration.  On November 5, 2010, the Honorable Petrese B. Tucker granted Northeastern's Motion to Compel Arbitration.

On February 11, 2011, plaintiff filed an amended complaint adding as a defendant DRS Towing, LLC, the company that executed the repossession.  Plaintiff later filed a Motion for Default Judgment against DRS Towing.  Judge Tucker denied plaintiff's motion upon finding that plaintiff did not properly serve process upon DRS Towing.

On June 30, 2011, plaintiff and Defendant City of Philadelphia consented to jurisdiction before the undersigned.

A summary judgment motion was filed on behalf of Defendants City of Philadelphia, Commissioner Johnson, Police Officer Jenkins, and Sergeant Williams.  In his response, plaintiff has voluntarily dismissed his claims against former Police Commissioner Sylvester Johnson in his official capacity, as well as claims against the City of Philadelphia. Plaintiff asserts that he opposes the dismissal of his constitutional claims for wrongful seizure and his state law claim for malicious prosecution.[1]  Thus, we shall review the motion with respect to Count I only, which alleges an unconstitutional seizure and deprivations of procedural

---

[1]In neither the original complaint nor the amended complaint do we find a claim for malicious prosecution against any of the defendants.

4

and substantive due process.

II.     STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment shall be "rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  A factual dispute is "material" only if it might affect the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   Further, a material fact presents a "genuine" issue where a reasonable jury could return a verdict in favor of the non-moving party.  Id.  Accordingly, the court must inquire "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one sided that one party must, as a matter of law, prevail over the other."  Id. at 243, 249.

The moving party bears the burden of showing that there is an absence of evidence to support the non-moving party's case.  Celotex Corp.  v.  Catrett, 477 U.S. 317, 325 (1986).  The non-moving party must establish every essential element, thus, "a complete failure of proof concerning an essential element" establishes that the moving party is entitled to judgment as a matter of law.  Id.  at 323-24.  Once the moving party has satisfied its burden, Federal Rule of Civil Procedure 56(e) requires the non-moving party to establish that there is a genuine issue of material fact, whether through affidavits or other admissible evidence.  Clark v. Clabaugh, 20 F.3d 1290, 1294 (3d Cir.  1994).  The non-moving party "must set forth specific facts showing that there is a genuine issue for trial" and cannot rely on "mere allegation or denial."  Anderson, 477 U.S. at 256.  To determine whether a non-moving party has established

that there is a genuine issue of material fact, the evidence presented must "be believed and all justifiable inferences are to be drawn in his favor." Id. at 255.

III.    DISCUSSION

      A.    Liability Under 42 U.S.C. Section 1983

Plaintiff has alleged violations of the Fourth and Fourteenth Amendments and seeks a remedy pursuant to 42 U.S.C. § 1983.  "Section 1983 provides a cause of action for violations of federally secured statutory or constitutional rights 'under color of state law.'" Abbott v. Latshaw, 164 F.3d 141, 145 (3d Cir.  1998), cert.  denied, George v.  Abbott, 527 U.S. 1035 (1999).  Section 1983 does not create substantive rights, but instead provides a remedy for deprivations of federal rights.  Kopec v.  Tate, 361 F.3d 772, 775-76 (3d Cir.  2004).   To prevail on a section 1983 claim, a plaintiff must meet two requirements.  First, a plaintiff must prove that he was deprived of a constitutional or federal right.  Harvey v.  Plains Twp.  Police Dep't, 635 F.3d 606, 609 (3d Cir.  2011).  Second, a plaintiff must prove that the deprivation was committed by a person acting under color of state law.  Id.

      B.    Alleged Constitutional Violations

Plaintiff claims that the police officers, in concert with the tow truck operator, wrongfully repossessed his vehicle.  While plaintiff only generally alleges a violation of the Fourth Amendment, we interpret this claim as alleging a violation of the Fourth Amendment's prohibition against unreasonable seizures.  The Fourth Amendment protects individuals against unreasonable searches and seizures of property.  In order to establish a claim under the Fourth Amendment, plaintiff must show that the actions of the defendant: (1) constituted a "search" or "seizure;" and (2) were unreasonable in light of the circumstances.  Open Inns, Ltd.  V.  Chester

6

Cnty. Sheriff's Dep't 24 F.Supp.2d 410, 424 (E.D. Pa. 1998), citing Brower v. Cnty. of Inyo, 489 U.S. 593, 595-600 (1989). A "seizure" in the context of the Fourth Amendment occurs when "there is some meaningful interference with an individual's possessory interests in that property." Soldal v. Cook Cnty., Ill., 506 U.S. 56, 61 (1992), Brown v. Muhlenberg Twp., 269 F.3d 205, 209 (3d Cir. 2001). When analyzing whether such an interference occurred, it is of no import that the officers did not take custody of plaintiff's property as long as the officers participated in the seizure. Gale v. Storti, 608 F.Supp.2d 629, 632 (3d Cir. 2009).

Plaintiff also alleges that the actions of defendants violated plaintiff's procedural and substantive due process rights, as guaranteed by the Fourteenth Amendment. Pursuant to the Fourteenth Amendment, states cannot deprive an individual of life, liberty, or property without due process of law. U.S. CONST. amend. XIV, § 1; Robb v. City of Phila., 733 F.2d 286, 292 (3d Cir. 1984). The Fourteenth Amendment provides for both procedural and substantive due process. See Planned Parenthood of Se. Pa. v. Casey, 505 U.S. 833, 846-47 (1992). With regard to procedural due process, an individual has "the right to advance notice of significant deprivations of liberty or property and to a meaningful opportunity to be heard." Abbott, 164 F.3d at 146. Courts recognize that possessory interests invoke procedural due process protections. Id. citing Fuentes v. Shevin, 407 U.S. 67, 87 (1972).

With regard to substantive due process, plaintiff must prove that "the government's deprivation of [the] protected interest shocks the conscience." Chainey v. Street, 523 F.3d 200, 219 (3d Cir. 2008). While this is fact dependent, the Supreme Court has stated that a state actor's behavior must be "so egregious, so outrageous" to shock the conscience. Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998). Even "inappropriate and overly aggressive" behavior by

7

police officers has not been deemed to rise to the level of "so egregious, so outrageous" conduct. Keahey v. Bethel Twp., 2012 WL 478936, at *6 (E.D. Pa. Feb. 15, 2012).

Defendants assert that plaintiff cannot establish that he had a possessory interest in the vehicle, such that there was no "seizure" and no violation of due process. Defendants argue that because plaintiff defaulted on the loan and understood that his vehicle was subject to repossession if he did not abide by the repayment terms, plaintiff no longer had a property interest when the vehicle was repossessed. Plaintiff, in his response, maintains that his ownership of the vehicle, years prior to entering into the loan with Northeastern, established his possessory interest.

We are unpersuaded by defendants' argument and find that plaintiff's ownership of the vehicle established a sufficient possessory interest for purposes of a Fourth Amendment seizure. Had plaintiff not had an interest in the vehicle, Northeastern, by way of the tow truck operator, would not have had a need to repossess the vehicle. In turn, we find that plaintiff had a sufficient interest in the vehicle for due process purposes. See Fuentes, 407 U.S. at 80-81 (1972)(in context of due process, court found there was a sufficient possessory interest in replevied goods purchased through installment sales contract even when scheduled payments were behind).

    C.    State Action Requirement for Section 1983 Liability

Defendants next argue that even if plaintiff had a possessory interest in the vehicle, plaintiff cannot prove that defendants were acting under color of state law in the context of the private repossession. Defendants contend that Third Circuit caselaw supports their position that the officers did not play a principal role in the seizure. Defendants assert that the only action actually taken by the defendant officers was the tapping on the vehicle window with the

collapsible baton, which does not establish that the repossession would not have happened without this conduct.  In contrast, plaintiff argues that the defendant officers took an active role in the repossession such that they acted under color of state law.

Notwithstanding the requirements discussed above to establish a claim under the Fourth and Fourteenth Amendments, plaintiff has pursued his rights against the defendants by invoking section 1983.  Again, section 1983 is an enabling statute that creates liability where someone, acting under color of state law, has violated a right guaranteed by the Constitution or federal laws.  To that extent, the threshold issue here is whether plaintiff has established state action.  See Groman v. Twp.  of Manalapan, 47 F.3d 628, 638 (3d Cir.  1995)(the "color of state law element is a threshold issue; there is no liability under § 1938 for those not acting under color of law.").

We note that where violations of the Fourteenth Amendment are alleged, as in the instant case, the "state action" requirement and the "under color of state law" requirement converge.  Lugar v.  Edmondson Oil Co., 457 U.S. 922, 935 n. 18 (1982).  Thus, if conduct satisfies the state action requirement under the Due Process Clause, it likewise satisfies the "under color of state law" requirement for purposes of section 1983.  Abbott, 164 F.3d at 145.

To be liable under section 1983, the actor must have "exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with authority of state law."  Id.  at 146.   Because the repossession in the instant case was initiated and executed by a private party, and not the police, the conduct of the defendant officers is determinative.  With particular respect to private repossessions, the Third Circuit has articulated a test to determine whether there has been state action.  The court must assess whether the officers maintained

neutrality or took an active role in the repossession resulting in an unconstitutional deprivation. Abbott, 164 F.3d at 146.   While police presence, alone, at the scene of a repossession does not constitute state action, an officer who actively assists in the repossession has abandoned neutrality and may be liable under section 1983.  Id; Harvey, 635 F.3d at 610.

The distinction between maintaining neutrality and taking an active role "lies in the particular facts and circumstances of the case." Harvey, 635 F.3d at 610.  The court has cautioned that liability will only attach where an officer has played a "principal role" in the seizure.  Abbott, 164 F.3d at 147.  In determining whether there has been active assistance, one must consider whether the officer facilitated, encouraged, directed, or compelled one party to do something. Harvey, 635 F.3d at 610.   An officer can only be liable for causing a constitutional deprivation where the officer "aid[ed] the repossessor in such a way that the repossession would not have occurred by for [the officer's] assistance."  Harvey, 635 F.3d at 610, quoting Marcus v. McCollum, 394 F.3d 813, 819 (10th Cir.  2004).

The Third Circuit also discussed the following "relevant circumstances" in determining whether the officer played a principal role in the repossession: (1) did the officer accompany the private party onto the scene; (2) did the officer tell the debtor the seizure was legal; (3) did the officer tell the debtor to stop interfering or he would go to jail; (4) did the officer intervene at more than one step in the repossession process; (5) did the officer fail to depart before the repossession was complete; (6) did the officer stand in close proximity to the creditor; and (7) did the officer unreasonably recognize the documentation of one party over the other.  Harvey, 635 F.3d 610, citing Price-Cornelison v.  Brooks, 524 F.3d 1103, 1117 (10th Cir.  2008).  In sum, the Third Circuit has explained that "the facts and circumstances of the police officer's role in the

private repossession must be examined in their totality."  Harvey, 635 F.3d at 610.

   The case law in this jurisdiction supports our position that the actions of Officer Jenkins and Sergeant Williams did not amount to action "under color of state law."  By way of distinction, the Third Circuit found that a reasonable jury could have found sufficient assistance by the police to constitute state action in the recent case of Harvey v.  Plains Twp.  Police Dep't, *supra*, wherein a tenant filed a section 1983 action alleging a violation of her Fourth Amendment rights after her ex-boyfriend entered her apartment with police assistance to retrieve his belongings.  In the words of the court, "[The officer] went to the scene of the repossession at [the ex-boyfriend's] behest, implied the search was legal by telling the landlord it was all right to open the door, entered the apartment to observe [the ex-boyfriend] remove items, stayed until the repossession was complete, followed immediately behind [the ex-boyfriend] during the seizure, unreasonably recognized [the ex-boyfriend's] documentation–a letter prepared by [the ex-boyfriend's] attorney purporting to list all the items which belonged to [the ex-boyfriend]–even though [plaintiff] was not present to contest the information in the letter, and attempted to mark off the items as [the ex-boyfriend] took them.  Harvey, 635 at 611.

   Similarly, the Third Circuit found that a constable and police officer played a "principal role" in the seizure of a vehicle in Abbott v.  Latshaw, 164 F.3d 141 (3d Cir.  1998).  In Abbott, plaintiff filed a section 1983 action alleging a Fourteenth Amendment due process violation by his ex-wife, the constable, and several police officers after his vehicle was seized. Following a divorce from Abbott, Latshaw sought to retrieve a van from her ex-husband.  Abbott, 164 F.3d at 144.  Latshaw went to the constable, showed him the title for the vehicle, and paid him to accompany her to the outside of plaintiff's office, where the van was parked.  Id.  Abbott

11

refused to turn over the keys, despite the constable's threats to arrest him.  Id.  The constable

spoke to Abbott's attorney, who explained that Abbott rightfully owned the vehicle, and the

constable called for police assistance.  Id.  The lieutenant who arrived also spoke to Abbott's

attorney who was now present and protesting the seizure.  Id. at 145.  The lieutenant threatened to

arrest Abbott's attorney, cited him for disorderly conduct, and briefly detained him in the police

car.  Id. During the dispute, a locksmith that the constable had recommended to Latshaw had

procured a key for the van, and Latshaw drove off in the van.  Id.

      The court found that the constable used his public authority to help Latshaw take

possession of the vehicle, after telling plaintiff the vehicle was going to be seized "one way or

another" and after threatening Abbott with arrest if he drove Latshaw's vehicle.  Id. at 147.  The

court also found that the lieutenant provided "affirmative intervention and aid" such that a

reasonably jury could find that the lieutenant played a principal role in the seizure, resulting in a

violation of Abbott's constitutional rights.  Id.  More specifically, the court determined that

"[t]here came a point during this incident when Lt.  George's role changed from protector of the

peace to the enforcer." Id.  at 149.

      In contrast to the above cases, and more aligned with the instant facts, is Sherry v.

Associates Comm. Corp.,60 F.Supp.2d 470 (W.D. Pa.  1998), affirmed 191 F.3d 445 (3d Cir.

1999), in which the court determined that police conduct was *not* substantial assistance for

purposes of a section 1983 action.  Plaintiffs filed suit alleging a violation of Fourteenth

Amendment due process rights for the wrongful repossession of two tractor trailers that were part

of their trucking business.   The defendant company that had a security interest in the trucks

sought the assistance of the police in repossessing the trucks.  Id.  at 471.  The police positioned

its vehicle behind the tow truck but stayed at a distance as the defendant informed plaintiffs that he was repossessing the trucks.  Id.  at 472.  Plaintiffs objected and explained they were current on payments.  Id.  The defendant handed plaintiffs an illegible faxed document and confrontation got louder.  Id.  One of the police approached and plaintiff asked "You are going to let them take these trucks on this kind of paperwork?".  Id.  The officer responded "Yes...You have to let them have the trucks."  Id.  at 472.  Plaintiffs surrendered the trucks.

The court explained that "the existence of state action hinge[d] upon the extent of the "aid" rendered by the Monroeville police officers."  Id.  at 475.  The court found that the officers arrived to preserve the peace and not to assist the tow truck operator in a repossession; did not take sides in the confrontation and instead remained at a distance during the dispute; and did not intervene until plaintiff spoke first to the officer.  Id.  at 475.

Applying the above factors to the instant case, we do not find that either Officer Jenkins or Sergeant Williams provided affirmative assistance in the repossession.  Because Officer Jenkins and Sergeant Williams had separate interactions with the plaintiff and tow truck operator, we shall consider and discuss their actions in turn.  However, the status of the repossession at the time of their arrival remains significant to the analysis of their actions.

As plaintiff and Officer Jenkins stated, when Officer Jenkins responded to plaintiff's call for police assistance, plaintiff's vehicle had already been hooked up to the tow truck and towed out of the driveway and halfway down the street.   As such, we find that the tow truck operator had successfully obtained possession of the vehicle prior to Officer Jenkins' arrival. The tow truck with plaintiff's vehicle suspended in the air was not in motion.  Officer Jenkins spoke to both the tow truck operator and to plaintiff and asked plaintiff to exit the vehicle.  Officer

13

Jenkins then called for supervisor back-up, at plaintiff's request.  Officer Jenkins took no further

action and simply awaited Sergeant Williams' arrival.   Plaintiff has not asserted that Officer

Jenkins reviewed documentation or had prior knowledge or involvement in the repossession prior

to the tow truck arriving.  We find Officer Jenkins' involvement to be inconsequential to the

ultimate repossession of the vehicle, such that Officer Jenkins did not act under color of state law

as required for liability to attach under section 1983.

        With respect to Sergeant Williams, we likewise find that possession by the tow

truck operator had already taken place before Sergeant Williams responded.  Again, the vehicle

was attached to the tow truck and had been driven down the street prior to Sergeant Williams'

arrival.  Thus, the tow truck operator took possession of the vehicle without police intervention or

assistance.

        Plaintiff argues that Philadelphia Police Department Directive 3 would provide a

basis for a remedy in this lawsuit.  We disagree and find compliance with Directive 3, in that the

tow truck operator had taken possession of the vehicle and, accordingly, the officers were obliged,

pursuant to Directive 3,  to let the repossessor leave with the vehicle.   However, whether we

found non-compliance or compliance with Directive 3, this would not be dispositive of whether a

constitutional violation had been committed by the defendant officers.

        Applying some of the factors on which the Third Circuit has focused in analyzing

police involvement in private repossessions, we note that Sergeant Williams did not accompany

the tow truck operator onto plaintiff's property to repossess the vehicle.  Sergeant Williams did

not review any documentation to make a decision on the appropriateness of the repossession.  Nor

did Sergeant Williams invest more time speaking or listening to the truck operator than to

14

plaintiff.  Rather, Sergeant Williams' actions appear to have been aimed at keeping plaintiff under control because the tow truck operator had already taken possession of the vehicle.  Again, as both plaintiff and defendant have stated in their pleadings, a critical factor in determining whether police were neutral as opposed to active is whether the repossession would have occurred without the police's assistance.  We emphasize that our finding that the repossession occurred prior to the defendant officers arriving on the scene.

Moreover, police in the instant case were called at plaintiff's request and did not have involvement in the repossession prior to arriving at the scene.  By tapping on plaintiff's window and demanding that plaintiff exit the vehicle because the tow truck operator *had already secured possession* of the vehicle, we find that Sergeant Williams sought to preserve peace and did not make decisions on the appropriateness of the seizure.  Accordingly, we cannot find that defendant Williams' conduct amounted to state action to sustain liability under section 1983.

IV.    CONCLUSION

Based on the foregoing, we do not find any genuine issues of material fact as to Count I of the Amended Complaint, the only claim remaining against Defendants Jenkins and Williams.  We, therefore, grant the summary judgment motion before us.

An appropriate order follows.

15